UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA WASKIEWICZ,

      Plaintiff,

                                    Civil Action No. 12-cv-11250

vs.                                HON. MARK A. GOLDSMITH

UNICARE LIFE AND HEALTH
INSURANCE CO.,

      Defendant.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT (DKT. 61) and (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND REMAND (DKT. 70)

### I.      INTRODUCTION

This is a denial-of-benefits case brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The matter is presently before the Court on the motion for judgment (Dkt. 61) filed by Defendant UniCare Life and Health Insurance Company ("UniCare") and the motion for leave to file an amended complaint and to remand (Dkt. 70) filed by Plaintiff Laura Waskiewicz. In addition to the briefs submitted by the parties, the Ford Motor Company Salaried Disability Plan ("the Plan") intervened for the purpose of filing a brief in response to Plaintiff's motion. The Court conducted oral argument on December 19, 2013 and subsequently ordered supplemental briefing. Supplemental briefs were filed by Plaintiff, UniCare, and the Plan.

For the reasons set forth below, the Court concludes that the denial-of-benefits decision was based on a reasonable interpretation of Plan provisions and must be upheld under the arbitrary-and-capricious standard of review. The Court, therefore, grants UniCare's motion for

judgment and denies, on grounds of futility, Plaintiff's motion to amend.   The Court also declines to award attorney's fees to UniCare.

## II.   BACKGROUND

The Plan is funded by Ford Motor Company ("Ford").   A.R. 71 (Dkt. 60).   Ford is the sponsor and administrator of the Plan, and UniCare is the Claims Processor for the Plan.   A.R. 71, 190-191.   UniCare does not insure the Plan benefits.   A.R. 71.

Plaintiff worked at Ford as an engineer.   The last day that Plaintiff worked at Ford was October 25, 2010; thereafter, Plaintiff did not return to her work.   A.R. 61.   On December 1, 2010, Plaintiff's father called UniCare to state that Plaintiff needed to claim disability beginning October 26, 2010.[1]   A.R. 61.   UniCare told Plaintiff's father to contact Ford to initiate the disability leave process.   A.R. 62.   UniCare also instructed Plaintiff to have the Disability Certification Form completed by her physician and submitted to UniCare, and to complete and submit the Application for Disability Benefits.   A.R. 62.

On December 13, 2010, UniCare received a completed Disability Certification Form from Dr. Pamela Rockwell, Plaintiff's physician.   A.R. 67.   Dr. Rockwell indicated that Plaintiff's conditions were depression, poorly controlled Type-I diabetes, and transgender issues (not further explained in the Disability Certification Form).   A.R. 67.   Dr. Rockwell stated that Plaintiff's last day of work was October 25, 2010, that her date of disability was October 25,

---

[1] The Court notes that there is some inconsistency in the record and in the briefing regarding whether Plaintiff claims her disability period began on October 25, 2010 or October 26, 2010.   A log note in the administrative record indicates that on December 1, 2010, Plaintiff's father indicated that Plaintiff was seeking disability beginning on October 26.   A.R. 61.   However, Plaintiff's briefs assert that she is claiming disability commencing on October 25.   Pl. Resp. at 13 (Dkt. 65); Pl. Supp. Br. at 1 (Dkt. 81).   Both UniCare and the Plan argue that whether the claimed disability period began on October 25 or October 26 is not material.   Def. Supp. Br. at 2 (Dkt. 84); Plan Supp. Br. at 1 (Dkt. 85).   Because the Court's decision in this matter is the same regardless of whether Plaintiff's claimed disability period commenced on October 25 or October 26, the Court need not resolve this inconsistency.

2010, and that the first day Dr. Rockwell treated Plaintiff after her last day of work was November 24, 2010.  A.R. 67.

Ford informed UniCare that Plaintiff had been terminated effective October 25, 2010. A.R. 71.  On December 22, 2010, UniCare sent a letter to Plaintiff indicating that Plaintiff's claim for benefits was denied because "UniCare has received information from Ford Motor Company indicating that effective October 25, 2010, you [were] no longer employed as a regular salaried employee."  A.R. 71.

On February 22, 2011, UniCare received a disability certification form from Dr. Sandra Samons.  A.R. 74, 125-126.  UniCare called Dr. Samons, who indicated that the first time she treated Plaintiff after Plaintiff's last day of work was December 2, 2010.  A.R. 74.  On March 23, 2011, UniCare sent a second denial letter to Plaintiff.  A.R. 75-76.

### III.    STANDARD OF REVIEW

The parties dispute whether the Court should review the denial-of-benefits decision using the deferential arbitrary-and-capricious standard or the de novo standard.  UniCare maintains that because the Plan provides both Ford and UniCare with discretion to determine eligibility for benefits, the arbitrary-and-capricious standard of review applies, Def. Br. in Support of Mot. for J. at 12 (Dkt. 61); Plaintiff argues that the arbitrary-and-capricious standard does not apply because UniCare, in relying on information received from the Ford human resources department, did not make a decision using any claimed discretion.  Pl. Resp. at 10 (Dkt. 65).

The Supreme Court has explained that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115

(1989).  "[A]pplication of the highly deferential arbitrary and capricious standard of review is appropriate only when the plan grants the administrator authority to determine eligibility for benefits or to construe the terms of the plan."  Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996).

      In the instant case, the Plan provides,

> The Company as the Plan Administrator, acting through the Claims Processor or by itself, shall have the discretionary authority to grant or deny Benefits under this Plan.  Benefits under this Plan will be paid only if the Claims Processor or the Plan Administrator determines in its discretion that the Participant is entitled to them.

A.R. 191.  Under the Firestone standard, this language is sufficient to warrant arbitrary and capricious review of Defendant's denial-of-benefits decision.  Plaintiff's argument that UniCare has not used any claimed discretion is unsupported by record evidence; nor does Plaintiff explain why applying information received from the Ford human resources department would render UniCare's decision nondiscretionary.   Because the Plan explicitly vests UniCare with discretionary authority to determine eligibility for benefits and to grant or deny benefits, the Court will apply the deferential arbitrary-and-capricious standard of review to UniCare's denial-of-benefits decision.

## IV.    ANALYSIS

### A.  UniCare's Motion for Judgment (Dkt. 61)

      UniCare argues that it is entitled to entry of judgment on the grounds that (i) it is not a proper defendant, (ii) Plaintiff failed to exhaust her administrative remedies, and (iii) the denial of benefits survives arbitrary-and-capricious review.  Whether UniCare was a proper defendant and whether Plaintiff exhausted her administrative remedies are threshold issues that the Court considers prior to reviewing the denial-of-benefits decision on the merits.  See, e.g., Bowden v.

4

Am. Home Mortg. Serv., Inc., No. 10-12972, 2012 WL 628543, at *5 (E.D. Mich. Feb. 27, 2012) ("Before turning to the substantive merits [of the claims], the Court must first address a threshold issue regarding the identity of the proper Defendant in this matter."); Angevine v. Anheuser-Busch Companies Pension Plan, 646 F.3d 1034, 1037 (8th Cir. 2011) ("Exhaustion is a threshold legal issue we review de novo." (citations and quotation marks omitted)).

For the reasons that follow, the Court concludes that UniCare is a proper ERISA defendant and that Plaintiff's administrative remedies must be deemed exhausted. The Court further concludes that the denial-of-benefits decision provided a reasonable explanation for denial in light of the Plan provisions and must be upheld under arbitrary-and-capricious review. The Court, therefore, grants UniCare's motion for judgment.

### 1. Proper ERISA defendant

UniCare argues that it is not a proper ERISA defendant because it does not insure or fund the Plan; instead, it only provides administrative services, and has no liability to pay Plan benefits. Def. Br. at 13. UniCare maintains that because the Plan is self-funded, UniCare, as the claims administrator, is not a proper party defendant. Def. Reply at 1-2 (Dkt. 68). Plaintiff argues in response that Defendant is a proper ERISA defendant, because it was a claims administrator making a final benefits determination. Pl. Resp. at 11.

In light of the parties' arguments, the Court turns to applicable law. In the Sixth Circuit, it is established that the ERISA plan itself is not the only proper party defendant to a denial-of-benefits claim. See Teel v. Sedgwick Claim Mgmt. Servs., Inc., 07-184R, 2007 WL 1231545, at *2 (W.D. Ky. Apr. 25, 2007) (noting that in the Sixth Circuit, a plan is not the only proper party defendant, but that a circuit split exists on the issue (citing Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988)). Instead, a party who administers the plan, controls the administration of

5

benefits, and makes the benefits decision may be the proper party defendant.  See, e.g., Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits." (citations omitted)).

In a case on-point to the instant matter, Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006), the Sixth Circuit concluded that a claims administrator who exercised full authority in adjudicating the claimant's claim for benefits and who made a decision with respect to the claimant's benefits was the proper party defendant for an ERISA denial of benefits claim. The Moore court first laid out the standards for determining which entities are fiduciaries under an ERISA plan, holding that "for purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets."  Id. (citation omitted).  The court specifically noted that, although another party (MTA) was the plan administrator, the defendant (Lafayette) was the "claims administrator and exercised full authority in adjudicating Plaintiff's claim for benefits."  Id. (emphasis added). The court concluded, "It was Lafayette who made a decision with respect to Plaintiff's benefits, not MTA. Lafayette, and not MTA, is therefore the proper party defendant for a denial of benefits claim by Plaintiff."  Id.

In our case, as in Moore, the Defendant, UniCare, is not the plan administrator; rather, UniCare exercised discretionary authority in adjudicating Plaintiff's claim and rendered the denial-of-benefits decision.  UniCare is also an ERISA fiduciary under the Plan because UniCare "administers claims for [the] employee welfare benefit plan[] and has authority to grant or deny claims."  Moore, 458 F.3d at 438 (citations omitted).  UniCare is, therefore, a proper ERISA

6

defendant.   See also Barron v. Blue Cross Blue Shield of Michigan, 898 F. Supp. 2d 933, 936-938 (E.D. Mich. Sept. 25, 2012) (concluding that a third party administrator who was a plan fiduciary exercising discretionary authority was a proper ERISA defendant despite the fact that the administrator did not have financial responsibility for payment of benefits).

In response, UniCare argues that Moore is distinguishable because in that case, Lafayette was the insurer of benefits and was, therefore, the party capable of paying any benefits determined to be due.  Def. Reply at 2 (Dkt. 68).  The Court disagrees.  In assessing which party was the proper ERISA defendant, the Moore court emphasized that authority and responsibility for handling claims was the determinative factor, not payment responsibility.

Furthermore, as Plaintiff points out, the terms of the Plan seem to contemplate a situation in which UniCare pays long-term disability benefits and is later reimbursed by Ford.  The Plan provides that short-term benefits paid at 100% of salary are paid directly from Ford's funds, and short-term benefits paid at 60% of pay and long-term benefits are paid by Ford through UniCare as part of an "Administrative Services Only" arrangement.  A.R. 189.  The Plan defines an "Administrative Services Only" arrangement as "an arrangement between the Plan Sponsor and the Claims Processor whereby the Claims Processor administers claims and is reimbursed by the Plan Sponsor."  A.R. 176.  The fact that UniCare may have initial responsibility for payment of disability benefits to claimants, prior to reimbursement from Ford, undercuts UniCare's argument that its lack of financial liability under the Plan renders it an improper Defendant.

Because UniCare administers claims and made the denial-of-benefits decision, and because UniCare may have initial responsibility for benefit payments under the terms of the Plan, the Court concludes that UniCare is a proper party defendant.

### 2.  Exhaustion of administrative remedies

UniCare asserts that Plaintiff's claims are barred for failure to exhaust her administrative remedies. The Court disagrees. For the reasons set forth below, the Court concludes that the denial letters did not provide sufficient notice of the required appeal procedures; therefore, the administrative remedies must be deemed exhausted.

The Plan provides requirements for information contained in denial-of-benefit letters and for exhaustion of administrative appeals. If a claim for disability benefits is denied, UniCare will provide written notification to the Participant. A.R. 193. The denial letter must include the specific reasons for the denial, specific reference to pertinent Plan provisions along with a copy of such Plan provisions, and "appropriate information as to the steps to be taken if the claimant wishes to submit his or her claim for review, along with a statement of the claimant's right to bring a civil action under Section 502(a) of [ERISA] following an adverse benefit determination on review." A.R. 193.

After receiving a denial letter, a Participant may appeal the decision to UniCare, and any appeal must be filed within 180 days. A.R. 193. If UniCare denies the appeal of the claim, the Participant may request an appeal to the Ford Salaried Disability Plan Committee, and any appeal must be filed within 180 days. A.R. 194. All administrative appeals must be exhausted before the Participant files a legal action, and a legal action may not be filed more than two years after the claim has accrued. A.R. 195.

There are two denial letters at issue in this case. The December 22, 2010 denial letter states:

> If you disagree with this determination and wish to file an appeal of the disability claim denial, [ERISA] provides you with the right to appeal the determination. You must file your appeal within 180 days of this letter by writing to us and clearly stating your position. If you have additional medical information or documentation not previously submitted, which objectively supports your disability, you may submit it for further consideration as part of your appeal.

8

> The additional information, along with previously submitted information, will be reviewed and you will receive written notification of the result of that review. . . . Additionally, if you disagree with our decision on this matter, you have the right to bring action in federal court under ERISA Section 502(a)(1)(B).

A.R. 71-72.  The March 23, 2011 denial letter contains the same language quoted above from the previous letter.  A.R. 115.

UniCare argues that Plaintiff's claim is barred because she failed to exhaust her administrative remedies, given that she did not appeal the March 23, 2011 denial letter to the UniCare Appeals Committee within 180 days and before bringing this legal action.  Def. Br. at 13-14.  UniCare maintains that the administrative record shows that UniCare substantially complied with the ERISA notice procedures because the denial letters advised Plaintiff of (i) the denial, (ii) the basis for the denial, (iii) the right to appeal, and (iv) the right to bring a legal action.  Def. Reply at 2-3.  UniCare asserts that because the formal written appeal to the UniCare Appeals Committee precedes the appeal to the Ford Committee, there was no procedural violation in the denial letters' failure to mention the second level of appeal.  Id. at 3.  UniCare contends that the letters gave Plaintiff a fair opportunity for review.  Id. at 4.

Plaintiff argues in response that under the ERISA regulations, the administrative appeals should be deemed exhausted because UniCare failed to comply with ERISA claim procedure regulations, and in particular, failed to describe the plan review procedures.  Pl. Br. at 11.  Plaintiff asserts that the claim denial letters contained no information regarding appealing to the Ford Committee and did not indicate that a legal action could be filed "following an adverse benefit determination on review."  Id. at 12.

Having considered these arguments, the Court first notes that "it is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for

recovery on an individual claim . . . ." Hill v. Blue Cross & Blue Shield of Mich., 409 F.3d 710,

717 (6th Cir. 2005). However, the applicable ERISA regulations provide:

> In the case of the failure of a plan to establish or follow claims procedures
> consistent with the requirements of this section, a claimant shall be deemed to
> have exhausted the administrative remedies available under the plan and shall be
> entitled to pursue any available remedies under section 502(a) of the Act on the
> basis that the plan has failed to provide a reasonable claims procedure that would
> yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1 (l).   These regulations further outline requirements for the "[m]anner

and content of notification of [a] benefit determination":

> (1) Except as provided in paragraph (g)(2) of this section, the plan administrator
> shall provide a claimant with written or electronic notification of any adverse
> benefit determination. Any electronic notification shall comply with the standards
> imposed by 29 CFR 2520.104b–1(c)(1)(i), (iii), and (iv). The notification shall set
> forth, in a manner calculated to be understood by the claimant--
>
> ***
>
> (iv) A description of the plan's review procedures and the time limits applicable to
> such procedures, including a statement of the claimant's right to bring a civil
> action under section 502(a) of the Act following an adverse benefit determination
> on review . . . .

29 C.F.R. § 2560.503-1 (g).   The Plan at issue in this case also requires a denial-of-benefits

decision to include "appropriate information as to the steps to be taken if the claimant wishes to

submit his or her claim for review, along with a statement of the claimant's right to bring a civil

action under Section 502(a) of the Act following an adverse benefit determination on review."

A.R. 193.

The Sixth Circuit has held that a plan administrator substantially complies with the

ERISA notice requirements if the notice to the claimant suffices to "notify[] [the claimant] of

their reasons for denying his claims and afford[s] him a fair opportunity for review." Moore, 458

F.3d at 436-437.

10

The Court concludes that the denial-of-benefits letters do not substantially comply with the ERISA notice requirements; nor do they substantially comply with the notice requirements set forth in the Plan itself.  The letters state that if Plaintiff wishes to appeal the denial, she must do so by writing to the UniCare Appeals Committee within 180 days.  A.R. 72, 115.  The letters also state, "Additionally, if you disagree with our decision on this matter, you have the right to bring action in federal court under ERISA Section 502 (a)(1)(B)."  A.R. 72, 115.  However, the letters do not indicate that an action in federal court may not be taken until after two levels of administrative appeals have been taken; nor do the letters make any mention of the required appeal to the Ford Committee after appealing to UniCare.  The failure to clearly describe the appeals procedure renders the letters deficient.

In particular, the letters, on their face, suggest that a claimant may immediately bring a federal court action challenging the disability determination; the letters do not indicate that the right to bring a federal action is triggered "following an adverse benefit determination on review."  29 C.F.R. § 2560.503-1 (g)(1)(iv); A.R. 193.  This could result in a situation in which a claimant, who is under the impression she may immediately file a federal suit, files a complaint in federal court, subsequently has her case dismissed for failure to exhaust administrative remedies, and finds that the time period for filing an administrative appeal has expired and she is left with no avenue to challenge the denial-of-benefits decision.  Furthermore, because the letters do not include the full appeals procedures and time frame applicable to such procedures, a claimant may not be aware of the two layers of administrative review that must be exhausted.  Because this notice does not suffice to provide Plaintiff with "appropriate information as to the steps to be taken if [she] wishes to submit [] her claim for review," A.R. 193, or to afford Plaintiff "a fair opportunity for review," Moore, 458 F.3d at 436-437, UniCare did not

11

substantially comply with the ERISA notice requirements or the requirements set forth in the Plan itself. The Court, therefore, concludes that the administrative remedies must be deemed exhausted. See 29 C.F.R. § 2560.503-1 (l) (requiring that the plan administrator provide certain information to the claimant regarding the plan's review procedures); 29 C.F.R. § 2560.503-1(l) (establishing that the failure to follow claims procedures consistent with the requirements of the ERISA regulations results in the claimant's administrative remedies being deemed exhausted); Nale v. Ford Motor Co. UAW Retirement Plan, 703 F. Supp. 2d 714, 720 (E.D. Mich. 2010) (deeming the plaintiff's administrative remedies exhausted where the defendant ERISA plan failed to provide a written notification required by the plan documents).

### 3. Denial-of-benefits decision

For the reasons that follow, the Court concludes that the rationale for denying Plaintiff's claim for benefits set forth in the December 22, 2010 letter – that Plaintiff was not eligible to apply for benefits because she was not an employee of Ford at the time of filing the disability claim – is a reasonable decision in light of the Plan provisions. Under the arbitrary and capricious standard, the Court upholds Unicare's denial of benefits decision.

Under the arbitrary-and-capricious standard, "[a] plan administrator's decision will not be deemed arbitrary or capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Judge v. Metro. Life Ins. Co., 710 F.3d 651, 657-658 (6th Cir. 2013) (citation and quotation marks omitted). An ERISA denial-of-benefits claim "stands or falls by the terms of the plan." Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285, 300 (2009) (citation and quotation marks omitted). Furthermore, "ERISA plans, like contracts, are to be construed as a whole." Alexander v. Primerica Holdings, Inc., 967 F.2d 90, 93 (3d Cir. 1992) (citation omitted).

12

In light of this standard, the Court turns to the reasons given in the denial letters for rejecting Plaintiff's claim.[2]  The first denial letter, dated December 22, 2010, states:

> UniCare has received information from Ford Motor Company indicating that effective October 25, 2010, you are no longer employed as a regular salaried employee.  According to the Salary Plan dated January 1, 2010, persons who are not employed as a regular salaried employee are not covered under the plan, and are not eligible for disability benefits. . . . According to the Salary Plan . . . you do not meet the requirement as a "Covered Employee" for disability benefits.

A.R. 71.  The denial letter cites Plan sections 2.08, defining "Covered Employee," and 2.13, defining "Employee;" an attachment to the letter summarizing applicable Plan provisions also cites Section 3, regarding "Eligibility for Benefits."  A.R. 71, 73.

The second denial letter, dated March 23, 2011, states:

> As stated in our previous letter dated December 22, 2010, UniCare has received information from Ford Motor Company indicating that effective October 25, 2010, you are no longer employed as a regular salaried employee.  According to the Salary Plan dated January 1, 2010, persons who are not employed as a regular salaried employee are not covered under the plan, and are not eligible for disability benefits.
>
> Your disability claim has been denied based on the requirements provided in the [Plan], entitled "Definitions," subsections 2.08 and 2.13, and Section 3 Eligibility for Benefits (i, ii, iv) . . . .

---

[2] While the Court is not precluded from reviewing reasons for denial provided in the parties' briefing but not mentioned in the denial letters, the Court notes that such post-hoc rationales for denial are not entitled to deferential review.  See Univ. Hosp. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 849 n.7 (6th Cir. 2000) ("[Departing from rationales given in denial letters] would, in our view, invite more terse and conclusory decisions from plan administrators, leaving room for them—or, worse yet, federal judges—to brainstorm and invent various proposed 'rational bases' when their decisions are challenged in ensuing litigation. At a minimum, if we permit such rehabilitation of the administrative record, there no longer is any reason why we should not apply a more searching de novo review of the administrator's decision."); see also Jessen v. CIGNA Group Ins., 812 F. Supp. 2d 805, 819 (E.D. Mich. 2011) ("As an initial matter, the Plan administrator never denied the benefits based on the self-inflicted-injury exclusion.  That argument was first proposed as a justification for the denial by defense counsel during the present litigation. . . . The tardy argument is not forfeited, but the Court must carefully scrutinize any such post-hoc rationalizations, and review them de novo . . . .").  Because the Court sustains the denial based on a reason set forth in a denial letter, it need not and does not consider reasons raised for the first time in the briefing.

> UniCare has been unable to authorize benefits for the disability claim that was filed with our office on December 1, 2010 because you have no disability coverage in force, and are not a "Covered Employee" as defined by the Salary Plan.
>
> Medical Information received by UniCare cannot establish proof of disability prior to November 24, 2010, the date you were first treated. As you were no longer employed as a regular salaried employee when you became disabled on November 24, 2010, according to the [Plan] you do not meet the requirement as a "Covered Employee" for disability benefits.

A.R. 114-115.

Having reviewed the two denial letters, the Court concludes that the letters present two rationales for denial of benefits. First, the December 22, 2010 letter indicates that benefits were denied because Plaintiff was not an employee of Ford when she filed her disability claim on December 1, 2010 and was, therefore, ineligible for benefits. Second, the March 23, 2011 letter, read as a whole, indicates that benefits were denied because Plaintiff was not an employee as of November 24, 2010, which is the date UniCare concluded Plaintiff's disability began. In the briefing, both UniCare and the Plan adopt the rationale given in the first denial letter, arguing that the Plan requires a claimant to be a Covered Employee as of the date the claimant files for disability benefits. Def. Br. at 17 (asserting that Plaintiff was not a regular salaried employee at the time she claimed disability); Def. Supp. Br. at 7-8 (arguing that under the Plan, only a Covered Employee participating in the Plan is entitled to receive benefits); Plan Br. at 5 (arguing that a claimant must be a Covered Employee on the date the claimant files for disability and contending that because Plaintiff was not a regular salaried employee when she applied for benefits, she was ineligible to receive benefits).

For the reasons that follow, the Court concludes that this rationale given for denial – that Plaintiff was not an employee of Ford at the time of filing for benefits – is a reasonable basis for

14

denial in light of the Plan provisions.  Section 3 of the Plan, entitled "Eligibility for Benefits,"

provides in part:

> As used in the Plan, a Covered Employee must meet the following conditions:
>
> (i)    Must be an Active Employee with a Disability.
> (ii)   Must be an Employee receiving appropriate care and treatment from a physician practicing within the scope of his/her license and be complying with the prescribed treatment plan.
>                                    * * *
> (iv)   Must provide proof of Disability including, but not limited to objective and clinical evidence of the Disability at the commencement of the Disability and throughout the duration of the Disability.

A.R. 180.  The Plan defines "Disabled" as referring to "an Employee who is unable to work due

to an accident, illness or pregnancy related condition."  A.R. 176.  "Employee" is defined as

"each person who is employed as a regular salaried employee by the Company and is enrolled on

the active employment rolls of the Company . . . ."  A.R. 177.  "Covered Employee" is defined as

"someone who meets the participation requirements in Section 4.01."  A.R. 176.  "Active

Employee" is defined as "an Employee who is actively at work the day prior to Disability and

who is assigned to the salaried payroll including those on paid time off."  A.R. 176.

Section 4.01 provides a schedule for the eligibility of Covered Employees to participate

in the Plan.  Coverage for general salary roll employees "shall commence on the first day of the

seventh month following the month of hire or rehire . . . ."  A.R. 181.  Finally, Section 4.02,

titled "Filing a Disability Claim," provides in part:

> A Covered Employee must notify the Claim Processor and the Company if the Employee is absent for more than five (5) consecutive Workdays.  Formal notification must occur on the sixth absence day.  Proof of Disability must be supplied to the Claims Processor within 21 calendar days of the Employee's last day of work or as soon thereafter as reasonably possible.  To make a claim for a Benefit under the Plan a Participant shall file a Disability claim by contacting the Company's Claim Processor and/or initiating a conditional disability leave of absence with the Company.

A.R. 181.

The Court concludes that it is a reasonable interpretation of these Plan provisions to require that a claimant be an employee of Ford at the time of filing a disability claim.  Section 4.02 explicitly refers to a "Participant" making a disability claim; to be a "Participant" under the Plan, one must be a "Covered Employee."  Furthermore, Section 3 mandates that to be eligible for benefits, a "Covered Employee" must meet a number of conditions.  It is, therefore, reasonable to conclude that a prerequisite to eligibility for benefits is status as a current "Covered Employee."  And to be a "Covered Employee," a claimant must be an "Employee" in the first place; that is, a person employed as a regular salaried employee by Ford.  It is undisputed that Plaintiff was terminated effective October 25, 2010 and that Plaintiff was not an employee of Ford as of December 1, 2010, when she filed her disability claim.  Therefore, the denial-of-benefits decision was supported by a reasonable interpretation of the Plan provisions.

Plaintiff's argument in response to UniCare and the Plan's contentions is that, because she qualifies as an "Active Employee," her subsequent termination does not bar her from applying for benefits.  Pl. Br. at 14-15.  She contends that, if a claimant qualifies as an "active employee with a disability," then subsequent termination does not bar the claimant from filing a disability claim unless it is one of the specific types of severance plan terminations provided in section 3(xi), a section that the parties agree is not applicable.  Pl. Supp. Br. at 6.  Plaintiff argues that the term "Covered Employee" refers to eligibility for initial plan participation and coverage, not eligibility to file a claim for disability benefits.  Id. at 6-7.  Plaintiff argues that once she became a "Covered Employee," her eligibility under the Plan was limited only by her "Active Employee" status, and because she was actively at work the day before the commencement of

16

her disability, she remained eligible for disability benefits.  Id. at 7.  The Court rejects this argument.

As the Court previously concluded, it is a reasonable interpretation of the Plan provisions to require a claimant to be a Covered Employee at the time of filing a disability claim.  But even if the Court accepts Plaintiff's assumption that the Covered Employee provision is irrelevant to determining eligibility for benefits, Plaintiff's argument still lacks merit.  Plaintiff maintains that the only requirement for maintaining her eligibility is her status as an Active Employee.  However, this is contradicted by the Plan terms.  Section 3 of the Plan, listing conditions that must be met to be eligible for benefits, contains a number of requirements beyond the "Active Employee" requirement.  The Plan explicitly provides that "[b]enefits under the Plan will begin after the Claim Processor has verified that the Covered Employee has met all of the eligibility requirements under Section 3."  A.R. 181 (emphasis added).  One of the eligibility requirements is listed in Section 3(ii), stating that the claimant must "be an Employee receiving appropriate care and treatment from a physician practicing within the scope of his/her license . . . ."  A.R. 180.  It is undisputed that Plaintiff was not an employee at the time of filing her disability claim.  Therefore, regardless of whether Plaintiff meets the definition of an "Active Employee," the denial-of-benefits decision still had a reasonable basis for the denial of benefits; namely, that Plaintiff was not an employee when she applied for benefits.[3]

---

[3] UniCare and the Plan also raise a number of other arguments as to why the denial-of-benefits decision should be upheld.  See Def. Supp. Br. at 4 (arguing that benefits were reasonably denied because Plaintiff did not provide proof of disability dating from the claimed commencement of disability); Plan Supp. Br. at 2-3 (arguing that UniCare had discretion to assign little weight to the medical records submitted after the claimed commencement of disability); Def. Br. at 16 (asserting that Plaintiff never formally notified UniCare of her absence); Def. Br. at 15 (arguing that Plaintiff has not exhausted her short-term disability benefits, as she was required to do).  Because the Court upholds the denial-of-benefits decision on other grounds, the Court need not reach these arguments.

Because the denial-of-benefits decision offered a reasonable explanation for denial based on the Plan provisions, the decision survives arbitrary-and-capricious review.   The Court accordingly grants UniCare's motion for judgment.

**B.  Plaintiff's Motion to File an Amended Complaint and Remand (Dkt. 70)**

Plaintiff seeks leave to file an amended complaint, adding Ford Motor Company Salaried Disability Plan as a defendant, and to remand the benefits claim for a full administrative review. Pl. Br. in Support of Mot. to Amend and Remand at 4 (Dkt. 70).   Both UniCare and the Plan filed briefs in opposition to this motion.   UniCare contends that Plaintiff's motion should not be granted because allowing amendment and remand would be futile, prejudicial, and result in undue delay.   Def. Resp. to Mot. to Amend at 4-5 (Dkt. 72).   The Plan argues that Plaintiff's motion should be denied because the record demonstrates Plaintiff is ineligible for benefits.   Plan Br. in Resp. to Mot. to Amend at 2 (Dkt. 77).   For the reasons that follow, the Court concludes that Plaintiff's motion to amend and remand must be denied on futility grounds.

A party may amend its pleading only with the opposing party's written consent or by leave of court, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

A motion for leave to amend may be denied if amendment would be futile; i.e., if the amendment would not correct the infirmities in the original complaint.  Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1348 (6th Cir. 1993).  If a party opposes a motion to amend

on the grounds of undue delay, the party opposing the motion to amend must make a significant showing, not only of delay, but also of prejudice.  Security Ins. Co. of Hartford v. Kevin Tucker & Assoc., 64 F.3d 1001, 1009 (6th Cir. 1995).

For the reasons discussed above, the Court concludes that UniCare's motion for judgment must be granted on the ground that the denial-of-benefits decision survives arbitrary-and-capricious review.  Therefore, the motion to amend and remand must be denied on the basis of futility; whether or not Plaintiff adds the Plan as a defendant and remands, the denial-of-benefits decision would remain reasonable in light of the Plan provisions.  Because amending the complaint to add the Plan as a defendant would not alter the fact that UniCare reasonably concluded Plaintiff was not eligible for benefits, amendment would be futile.

Accordingly, the Court denies Plaintiff's motion to amend and remand.[4]

## C. Attorney's Fees

In its motion for judgment, UniCare seeks attorney's fees.  UniCare argues that it is entitled to attorney fees because it should succeed on the merits, and because Plaintiff failed to name a proper defendant and failed to exhaust the administrative remedies.  UniCare. Br. at 19.  UniCare maintains that it is entitled to an award of attorney fees under both Hardt v. Reliance Standard Life Insurance Company, 560 U.S. 242, 130 S.Ct. 2149, 2157-2158 (2010) and

---

[4] Because the Court denies Plaintiff's motion on futility grounds, the Court need not reach the other arguments raised by the parties regarding amendment, including whether Plaintiff is barred from adding the Plan as a defendant, whether amending the complaint would result in prejudice to the parties, and whether amendment would be barred by undue delay.  The Court further notes that, although Plaintiff's motion requests that the Court remand the case due to the "procedural defects in the case," Pl. Mot. at 4, the Court has already addressed the defective notice of claim appeal procedures in the denial letters by deeming Plaintiff's administrative remedies exhausted under 29 C.F.R. § 2560.503-1 (l).  Furthermore, unlike the case relied on by Plaintiff in support of her remand argument, Elliot v. Metropolitan Life Insurance Company, 473 F.3d 613, 621-622 (6th Cir. 2006), the denial-of-benefits decision in this case survives arbitrary-and-capricious review.  For these reasons, remand is not warranted.

Secretary of Department of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985).  For the reasons

that follow, the Court concludes that an award of attorney fees to UniCare is not warranted.

In Hardt, 130 S.Ct. at 2157-2158, the Supreme Court concluded that a court may award

attorney fees under the ERISA fee-shifting statute to a party showing some degree of success on

the merits; this is met "if the court can fairly call the outcome of the litigation some success on

the merits without conducting a lengthy inquiry into the question whether a particular party's

success was substantial or occurred on a central issue."   In King, 775 F.2d at 669, the Sixth

Circuit laid out a five-factor test to apply in determining whether an award of attorney fees

should be granted:

> (1) the degree of the opposing party's culpability or bad faith; (2) the
> opposing party's ability to satisfy an award of attorney's fees; (3) the
> deterrent effect of an award on other persons under similar circumstances;
> (4) whether the party requesting fees sought to confer a common benefit
> on all participants and beneficiaries of an ERISA plan or resolve
> significant legal questions regarding ERISA; and (5) the relative merits of
> the parties' positions.

In O'Callaghan v. SPX Corporation, 442 F. App'x 180, 186 (6th Cir. 2011), the Sixth

Circuit clarified that, after Hardt, the five-factor test is still applicable to determining whether

attorney fees should be awarded in an ERISA case:

> The Supreme Court's subsequent decision in Hardt v. Reliance Standard
> Life Ins. Co., —— U.S. ——, 130 S.Ct. 2149, 2156, 176 L.Ed.2d 998
> (2010), does not change matters.  Hardt clarified that a fee claimant need
> not be a "prevailing party" to be eligible for attorney's fees under
> ERISA's fee-shifting statute. Eligibility for attorney's fees requires merely
> that the claimant have achieved "some degree of success on the
> merits." Id. at 2158.  But Hardt does not change the district court's five-
> factor analysis.   Hardt merely relaxes the threshold for eligibility for
> attorney's fees—from "prevailing party" to "some degree of success on
> the merits." Id. at 2156.  Even under this more relaxed threshold for
> eligibility, O'Callaghan must still demonstrate his entitlement to
> attorney's fees under 29 U.S.C. § 1132(g)(2). The district court's
> conclusion that he has not done so was not an abuse of discretion.

Therefore, under <u>Hardt</u> and <u>King</u>, the Court may, in its discretion, award attorney fees if (i) the party seeking attorney's fees achieved some degree of success on the merits, and (ii) the Court concludes under the five-factor test that the party is entitled to attorney's fees.

UniCare, which is entitled to entry of judgment in this matter, achieved "some degree of success on the merits." However, upon applying the five-factor test, the Court concludes that UniCare is not entitled to attorney's fees. Notably, UniCare has not pointed to evidence of bad faith on Plaintiff's part. Furthermore, it is unclear whether Plaintiff has the ability to satisfy an award of attorney fees. In addition, the imposition of attorney fees would not have a deterrent effect on others who might file frivolous claims because Plaintiff's claim is not frivolous. Plaintiff's claim for benefits involved issues of ERISA Plan language interpretation requiring the evaluation and interpretation of multiple Plan provisions. Such analysis required, in addition to the initial round of briefing and oral argument, supplemental briefs from the parties and from the intervenor. Because of the lack of evidence of bad faith on Plaintiff's part and because Plaintiff's litigation was not frivolous, the Court concludes that an award of attorney's fees would not act as a deterrent against litigants pursuing frivolous claims, but may act as a deterrent against litigants pursuing non-frivolous and genuinely disputed denial-of-benefits claims.

Furthermore, there is no assertion that UniCare sought to confer a common benefit on all ERISA Plan participants or resolve significant legal questions regarding ERISA in general. Finally, the relative merits of the parties' positions are somewhat balanced, despite the award of judgment to UniCare; Plaintiff raised meritorious arguments asserting that (i) UniCare is an appropriate party defendant and (ii) the administrative remedies should be deemed exhausted. For these reasons, applying the five-factor test, the Court concludes that UniCare is not entitled to attorney's fees.

## V.    CONCLUSION

For the reasons stated above, the Court grants UniCare's motion for judgment, denies

Plaintiff's motion to amend and remand, and denies an award of attorney's fees to UniCare.

SO ORDERED.

Dated:  March 19, 2014                                  s/Mark A. Goldsmith
            Flint, Michigan                                  MARK A. GOLDSMITH
                                                                    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on March 19, 2014.

                                                                    s/Deborah J. Goltz
                                                                    DEBORAH J. GOLTZ
                                                                    Case Manager